```
                                                       U.S.
        IN THE UNITED STATES DISTRICT COURT FOR
          THE SOUTHERN DISTRICT OF GEORGIA      2015 MAR 31
                    SAVANNAH DIVISION
                                                  CLERK
                                                 SO. DIST. OF GA.
SOUTHERN MOTORS CHEVROLET,  )
INC.,                       )
                            )
     Plaintiff,             )
                            )
v.                          )    CASE NO. CV414-152
                            )
GENERAL MOTORS, LLC,        )
                            )
     Defendant.             )
                            )
```

## O R D E R

Before the Court is Defendant's Motion to Dismiss (Doc. 25), to which Plaintiff has filed a response in opposition (Doc. 26). Defendant has also filed a reply. (Doc. 30.) In its motion, Defendant seeks to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief can be granted. For the following reasons, Defendant's Motion to Dismiss (Doc. 25) is **DENIED**.

### BACKGROUND

Myron Kaminsky and his two sons, Adam and Ross Kaminsky (the "Kaminskys"), own and operate a number of car dealerships in and around Chatham and Effingham County, Georgia. (Doc. 24 ¶ 7.) The Kaminskys are white. (Id. ¶ 8.) This case arises from the Kaminskys's failed attempt to purchase a car dealership located in Rincon, Georgia (the "Dealership") from a Mr. B.G.

Fuller in early 2014.[1] (Id. ¶ 27.) Plaintiff is a corporation created by the Kaminksys for the purpose of completing the transaction. (Id. ¶ 9.)

In or around December 2013 or January 2014, the Kaminskys entered into an agreement with Mr. Fuller to purchase the Dealership. (Id.) Shortly thereafter, Mr. Fuller notified Defendant of his intent to sell the Dealership to the Kaminksys. (Id.) Because Defendant is the franchisor of the Dealership, Defendant has certain rights with regard to its sale and purchase. (Id.) Throughout the early portion of 2014, the Kaminksys created a business plan, secured financing, and completed paperwork in preparation for their purchase of the Dealership. (Id. ¶ 10.)

In January 2014, however, Defendant was in contact with a Mr. Winston R. Pittman, Sr. regarding his potential purchase of the Dealership. (Id. ¶ 20.) Mr. Pittman is African-American and a majority or sole owner of another Savannah area car dealership, Chatham Parkway Toyota. (Id. ¶ 19.) At roughly the same time the Kaminksys were engaging in preparatory work for their prospective purchase, Mr. Pittman incorporated multiple new entities through which to acquire the Dealership. (Id. ¶ 21.)

According to Plaintiff, Defendant came under fire from civil rights leader Jesse Jackson in October 2012—prior to the

---

[1] For the purposes of this motion, Plaintiff's allegations as set forth in its amended complaint will be taken as true. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

2

events from which this case arises—for the limited number of minority-owned car dealerships retailing Defendant's vehicles. (Id. ¶ 14.) Mr. Jackson, among others, urged Defendant to adopt a strategy to boost the number of minority-owned dealerships in the wake of the Federal Government's bailout of the United States automotive industry. (Id.) In response, Defendant's then-CEO Dan Akerson stated his commitment to recruiting more African-American dealership owners in the future. (Id.)

In July 2013, Defendant's North American President—Mark Reuss—stated during a panel discussion at an automotive industry conference that the company wanted to add twenty-five minority-owned dealerships by the end of the year. (Id. ¶ 15.) Another of Defendant's executives—Eric Peterson—further stated to reporters that Defendant would work with dealers who wanted to sell their stores, but who did not already have buyers, "hoping to snag stores for minority dealers." (Id.) Mr. Peterson also indicated that Defendant had exercised its right of first refusal on dealership transactions in the past and would continue to do so in the future. (Id.) According to the amended complaint, Defendant believes exercising such a right can "open the door for a minority buyer." (Id.) Defendant ultimately added twenty-one minority owners in 2013, although Mr. Peterson later indicated that the company was again aiming for twenty-five additions in 2014. (Id. ¶¶ 16-17.)

In March 2014, Defendant informed Plaintiff that Defendant was exercising its right of first refusal with regard to the

3

sale of the Dealership. (Id. ¶ 27.) On March 26, 2014, Plaintiff's counsel submitted to Defendant for reimbursement an accounting of expenses incurred in preparation of Plaintiff's attempted purchase of the dealership. (Id. ¶ 28.) On April 17, 2014, Defendant sent a letter to Plaintiff indicating its refusal to reimburse Plaintiff for some of the expenses included in Plaintiff's accounting—specifically, expenses attributed to time spent by the Kaminskys and their employees preparing for the purchase. (Id. ¶ 29.)

On April 30, 2014, Plaintiff initiated this action against Defendant. (Doc. 1.) On August 16, 2014, Plaintiff filed an amended complaint alleging that Defendant racially discriminated against Plaintiff's white owners in violation of 42 U.S.C. § 1981 and § 1982 by refusing to allow Plaintiff to purchase the Dealership. (Doc. 24 ¶¶ 31-54.) Plaintiff also alleges that Defendant violated the Georgia Motor Vehicle Franchise Practices Act because Defendant arbitrarily rejected Plaintiff's agreed-upon deal with Mr. Fuller and refused to pay Plaintiff's reasonable expenses incurred during the attempted purchase. (Id. ¶¶ 55-62.) On September 6, 2014, Defendant filed the present Motion to Dismiss, arguing that Plaintiff has failed to state a claim upon which relief can be granted. (Doc. 25.) Plaintiff has filed a response (Doc. 26), to which Defendant has filed a reply (Doc. 30).

4

**ANALYSIS**

I.  MOTION TO DISMISS STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Aschroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).[2] "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (internal quotations omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id.

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

---

[2] Iqbal makes clear that Twombly has been the controlling standard on the interpretation of Federal Rule of Civil Procedure 8 in all cases since it was decided. Iqbal, 556 U.S. at 684 ("Though Twombly determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8 . . . [that] in turn governs the pleading standard in all civil actions and proceedings in the United States district courts." (internal quotations and citations omitted)).

5

Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." Sinaltrainal, 578 F.3d at 1268. That is, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 545).

## II. DISCRIMINATION UNDER 42 U.S.C. § 1981 AND § 1982

Plaintiff alleges that Defendant violated 42 U.S.C. § 1981 and § 1982 when Defendant exercised its right of first refusal to prevent the sale of the Dealership to Plaintiff. To state a claim for non-employment discrimination under § 1981, a plaintiff must allege that (1) he or she is a member of a protected class; (2) the defendant intended to racially discriminate against him or her; and (3) the discrimination concerned one or more of the activities enumerated in the statute. See Jiminez v. Wellstar Health Sys., 596 F.3d 1304, 1308 (11th Cir. 2010). The rights enumerated in the statute include the right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property . . . ." 42 U.S.C. § 1981(a). Section 1982 is largely similar to

6

§ 1981 except that it focuses on rights related to property ownership rather than the ability to make and enforce contracts. CBOCS W., Inc. v. Humphries, 553 U.S. 442, 446-47 (2008). To state a claim for discrimination under § 1982, a plaintiff must again allege facts to show (1) that he or she is a member of a protected class; and (2) that the defendant intentionally discriminated against him or her on the basis of race; but also (3) that "there has been resulting interference in his [or her] rights or benefits connected with the ownership of his [or her] property." Todd v. Ala. Power, 2010 WL 749334, at *3 (S.D. Ala. Mar. 1, 2010). The statutes have frequently been treated as "sister statutes" by the courts and are construed similarly. CBOCS, 553 U.S. at 447.

As is common in cases such as this, the critical issue for both claims lies in the second prong of the analysis. Specifically, the Court must determine whether Plaintiff has pled sufficient facts to plausibly show that Defendant intentionally discriminated against Plaintiff because of the race of its owners. Defendant offers no argument regarding the first and third prongs.

In its motion, Defendant argues that Plaintiff has failed to plead sufficient facts in its complaint to establish that Defendant refused the sale of the Dealership to Plaintiff for racially discriminatory reasons. According to Defendant, the

7

facts alleged in the complaint merely indicate Defendant's commitment to diversity and in no way imply an actual intent to discriminate against Plaintiff. (Doc. 25 at 12.) As a result, Defendant contends that Plaintiff has failed to plead facts as required under Twombly and Iqbal to establish Plaintiff's claims as "plausible" rather than merely "conceivable." (Id. at 9.)

In response, Plaintiff maintains that it has sufficiently pled facts to meet the pleading requirements of Twombly and Iqbal. According to Plaintiff, "it is not speculative, and it is indeed plausible and clearly what happened" that Defendant refused the sales contract for the dealership on the basis of race. (Doc. 26 at 12-13.) According to Plaintiff, the fact that its purchase was denied in the same manner that one of Defendant's executives suggested could "open the door for minority buyer" is indicative of discriminatory intent. (Id. at 14.) In addition, Plaintiff points out that its purchase was denied despite Defendant admitting the decision to exercise its right of first refusal had no relation to Plaintiff's qualifications as a buyer. (Id. at 15.)

The alleged facts regarding Plaintiff's attempted purchase of the Dealership are relatively straightforward. Plaintiff negotiated a deal with Mr. Fuller, completed Defendant's necessary paperwork, and was informed roughly two months later that its proposal was denied because Defendant exercised its

8

right of first refusal. (Doc. 24 ¶¶ 9-10, 22.) However, Plaintiff's amended complaint also references numerous statements and news reports dating back to at least 2012 concerning Defendant's company-wide diversity initiatives. (Doc. 24 ¶¶ 14-18.) When viewed together, these reports chronicle Defendant's publicly-announced policy regarding its efforts to increase its number of minority-owned dealerships. More specifically, the amended complaint also references two specific statements that Plaintiff believes plausibly suggest Defendant denied Plaintiff's purchase of the Dealership for racially discriminatory reasons. After careful consideration, the Court agrees.

First, Plaintiff alleges that one of Defendant's executives—Mr. Peterson—claimed that Defendant would work with dealers who wanted to sell their stores, but who did not already have buyers, "hoping to snag stores for minority dealers." (Doc. 24 ¶ 15.) Plaintiff also alleges Mr. Peterson's statement that Defendant's use of its right of first refusal "can open the door for a minority buyer" is evidence of Defendant's discriminatory intent. Taking these statements as completely true, the Court concludes that Plaintiff has alleged sufficient facts to at least plausibly suggest a discriminatory motive on Defendant's behalf. Plaintiff's purchase was rejected using a mechanism Defendant had previously suggested could aid in obtaining

minority owners.[3] In addition, Plaintiff has alleged facts to demonstrate that it is a well-qualified purchaser and Defendant has offered no reason why the contract was denied. Although federal pleading requirements have been heightened, a plaintiff still need only plead sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" of its claims. Twombly, 550 U.S. at 556. Here, the Court finds Plaintiff has met its burden.

Defendant also argues that Plaintiff has failed Iqbal's new pleading standard requiring factual allegations to controvert any "obvious alternative explanations" to a plaintiff's claims. (Doc. 25 at 9-10.) According to Defendant, Plaintiff fails this requirement because the amended complaint does not address the possible explanation that Defendant refused the sale because Mr. Pittman was a superior ownership candidate than Plaintiff. (Id. at 14-15.) However, the Court disagrees that Iqbal has actually mandated this cumbersome pleading framework. Rather, the Court

---

[3] Defendant urges the Court to review of the news report attached to Plaintiff's complaint. (Doc. 24 at 35.) The news report suggests that Mr. Peterson's assertion regarding the ability of Defendant's right of first refusal to open the door for a minority buyer is not the statement of Defendant or one of Defendant's employees, but rather commentary by the article's author. (Doc. 24 at 35.) However, the article clearly suggests Defendant's employee was speaking of the right of first refusal in reference to how Defendant could potentially acquire minority owners. Accordingly, the Court can discern no reason to disregard the statement given the context in which it was offered.

finds that the "obvious alternative explanation" language used in Iqbal merely demonstrates a means by which a court might discern what is plausible rather than merely speculative.[4] Regardless, given that Plaintiff has alleged facts to show it too was a well-qualified potential purchaser, the Court disagrees that the superiority of Mr. Pittman's candidacy is so obvious an alternative explanation that it should preclude Plaintiff's suit. While Mr. Pittman may certainly be a qualified buyer, the Court finds no deficiency in Plaintiff's amended complaint merely because it fails to address Mr. Pittman or his qualifications. Accordingly, the Court finds Plaintiff has alleged sufficient facts to state plausible claims under 42 U.S.C. § 1981 and § 1982.

III. STATE-LAW CLAIMS

In its amended complaint, Plaintiff has alleged that Defendant "arbitrarily refused to agree to the proposed change of sale to [Plaintiff] . . . in violation of O.C.G.A. § 10-1-653." (Doc. 24 ¶ 61.) In addition, Plaintiff seeks reimbursement under O.C.G.A. § 10-1-663.1 for expenses connected with its attempted purchase of the Dealership. (Id. ¶¶ 56-58.) Defendant responds that § 653 is inapplicable to this case because

---

[4] Defendant does not provide, and the Court cannot find, any support for its theory that the pleading standards described in Iqbal have created a new affirmative "bar" that defendants might use against a plaintiff's claims.

11

Defendant had a statutory and contractual right to use its right of first refusal. (Doc. 25 at 16-17.) Accordingly, Defendant maintains it cannot be held liable for doing what it was legally permitted to do. Furthermore, Defendant argues that Plaintiff has requested unreasonable costs and expenses not covered by § 663.1. (Id. at 18 n.8.)

The Court finds Defendant's arguments unpersuasive. Section 653 states, in pertinent part, that a

> franchisor shall not arbitrarily refuse to agree to [a] proposed change or sale and may not disapprove or withhold approval of such change or sale unless the franchisor can prove that its decision is not arbitrary and that the new management, owner, or transferee is unfit or unqualified to be a dealer based on the franchisor's prior written, reasonable, objective, and uniformly applied, within reasonable classifications, standards or qualifications which directly relate to the prospective transferee's business experience, moral character, and financial qualifications.

O.C.G.A. § 10-1-653. As a result, while it is undisputed that Defendant had both a contractual and statutory right to exercise its right of first refusal, the statute clearly indicates that Defendant may not do so for an arbitrary reason. As discussed above, Plaintiff has alleged sufficient facts to suggest that Defendant exercised its right of first refusal for an arbitrary, and indeed illegal and discriminatory, reason. Accordingly, the

12

Court concludes that Plaintiff's claim under § 653 should not be dismissed.[5]

The Court also finds Plaintiff has sufficiently pled a claim under § 663.1. Section 663.1(5) states that, if a dealership franchisor exercises its right of first refusal, the franchisor must

> pay the reasonable expenses, including reasonable attorney's fees, which do not exceed the usual customary, and reasonable fees charged for similar work done for other clients incurred by the proposed new owner and transferee before the franchisor's exercise of its right of first refusal in negotiating and implementing the contract for the proposed change of ownership or transfer of dealership assets.

O.C.G.A. § 10-1-663.1(5). Here, Plaintiff has requested reimbursement for a variety of expenses including hourly rates for Plaintiff's owners and employees. (Doc. 25 at 5.) While Defendant may find such demands objectionable, the Court will not conclude as a matter of law that these costs are not covered by the statute. While it will ultimately be for a jury to decide what expenses are reasonable, the Court finds Plaintiff has alleged sufficient facts to demonstrate a plausible claim under § 663.1. Accordingly, Defendant's motion must be denied.

---

[5] Defendant also argues that Plaintiff's claim under § 653 fails for the same pleading deficiencies that should doom Plaintiff's claims under 42 U.S.C. § 1981 and § 1982. (Doc. 25 at 18-19.) However, as the Court finds Plaintiff has sufficiently pled its claims under § 1981 and § 1982, the Court similarly finds Defendant's arguments on this matter unpersuasive.

13

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 25) is **DENIED**.

SO ORDERED this 31st day of March 2015.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA